**Abdur RAHIM, Plaintiff,**

v.

**Gene McNARY, Commissioner, Immigration and Naturalization Service, et al., Defendants.**

Nos. 92 Civ. 6216 (LBS), 92 Civ. 6552 (LBS), 92 Civ. 6553 (LBS), 92 Civ. 7159 (LBS), 92 Civ. 8245 (LBS)–92 Civ. 8247 (LBS), 93 Civ. 0598 (LBS), 93 Civ. 0599 (LBS), 93 Civ. 0870 (LBS), 93 Civ. 0871 (LBS), 93 Civ. 1042 (LBS)–93 Civ. 1044 (LBS), 93 Civ. 1156 (LBS), 93 Civ. 1262 (LBS), 93 Civ. 1378 (LBS), 93 Civ. 2014 (LBS), 93 Civ. 2020 (LBS), 93 Civ. 2030 (LBS), 93 Civ. 2363 (LBS), 93 Civ. 2431 (LBS)–93 Civ. 2433 (LBS), 93 Civ. 2953 (LBS), 93 Civ. 3420 (LBS) and 93 Civ. 3422 (LBS).

United States District Court,
S.D. New York.

July 19, 1993.

As Amended July 27, 1993.

Charles A. Grutman, New York City, for plaintiff.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, for defendants (Diogenes P. Kekatos, Asst. U.S. Atty. and James A. O'Brien, III, Sp. Asst. U.S. Atty., of counsel).

## OPINION

SAND, District Judge.

The plaintiffs in these twenty-seven consolidated cases are undocumented aliens who applied for, and were denied, temporary residence under the Special Agricultural Worker ("SAW") provisions of the Immigration Reform and Control Act of 1986 ("IRCA" or the "Reform Act"), 8 U.S.C. § 1160. This action involves a challenge to two Immigration and Naturalization Service ("INS") regulations which provide, in part, that motions to reopen a proceeding or reconsider a decision "shall not be considered." *See* 8 C.F.R. § 210.2(g), § 103.5(b) (1993). Plaintiffs claim that the challenged regulations are inconsistent with IRCA.

The defendants have moved pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) to dismiss the complaints. Because we conclude that the challenged regulations are consistent with IRCA, the defendants' motion to dismiss is granted.

## STATUTORY AND REGULATORY BACKGROUND

Title III of the Immigration Reform and Control Act of 1986 required the Attorney General to adjust the status of any alien farmworker who could establish that he or she had resided in the United States and performed at least 90 days of qualifying agricultural work during the 12-month period prior to May 1, 1986, provided that the alien could also establish his or her admissibility in the United States as an immigrant. 8 U.S.C. § 1160(a). An alien granted SAW status under IRCA would first become a temporary resident, *see id.*, and eventually could obtain the status of permanent resident. *See* 8 U.S.C. § 1160(a)(2); *see generally McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 484–86, 111 S.Ct. 888, 892–93, 112 L.Ed.2d 1005 (1991). As is customary, Congress delegated to the Attorney General authority to issue detailed regulations that would govern implementation of the Act.

The Reform Act provides that applications for SAW status must be filed with the INS Legalization Office ("LO") or with a Qualified Designated Entity which will forward the application to the appropriate LO. 8 U.S.C. §§ 1160(b)(1), (2), (4). The LO reviews each application for completeness, *see* 8 C.F.R. § 210.1(d) (1993), and then interviews the applicant. 8 C.F.R. § 210.2(c)(2)(iv) (1993). After the interview, the INS examiner recommends approval or denial of the application. The file is then forwarded to one of the four INS Regional Processing Facilities ("RPFs") for final review and decision.

If the INS examiner recommended that the application be approved, and if the RPF concurs, the applicant is notified that the application has been approved. If the examiner recommended a denial and the RPF concurs, a notice of intent to deny is sent to the applicant. In such notice, the applicant is advised of the reasons for the denial, and is given an opportunity to rebut and submit further documentation in support of the application. If after receiving a response from the applicant, the RPF determines that the

application should be denied, the applicant is notified of the denial and of the right to appeal.

*Administrative and Judicial Review*

The provisions governing administrative and judicial review "respecting an application for adjustment of status" under IRCA's SAW program are found in 8 U.S.C. § 1160(e).[1] Pursuant to IRCA's instruction that the Attorney General "establish an appellate authority to provide for a single level of administrative review," 8 U.S.C. § 1160(e)(2)(A), the Legalization Appeals Unit ("LAU") was created to hear administrative appeals of denials of SAW applications. Although review by the LAU is based on the administrative record established "at the time of the determination on the application," 8 U.S.C. § 1160(e)(2)(B), the applicant may submit for the LAU's consideration any "additional or newly discovered evidence as may not have been available at the time of the determination."[2] *Id.*

If the LAU determines that the denial is correct, it will issue a final notice of denial. Pursuant to § 1160(e)(3)(A), judicial review of such a denial is limited to review of an order of exclusion or deportation under 8 U.S.C. § 1105a. The statute further provides that judicial review will be based solely upon "the administrative record established at the time of the review by the appellate authority," *i.e.*, by the LAU. 8 U.S.C. § 1160(e)(3)(B). In addition, the findings of fact and determinations contained in the record are "conclusive" unless the applicant can demonstrate either an abuse of discretion or that the findings are "directly contrary to clear and convincing facts contained in the record considered as a whole." *Id.*

*Motions to Reopen*

The text of Title III of IRCA does not mention motions to reopen. Nevertheless, regulations enacted pursuant to IRCA expressly provide that motions to reopen a proceeding or reconsider a decision "shall not be considered." *See* 8 C.F.R. § 210.2(g), § 103.5(b) (1993). However, the regulations do allow the director of the RPF to "*sua sponte* reopen any proceeding ... and reverse any adverse decision." Similarly, the Chief of the LAU may "*sua sponte* reopen any proceeding ... and reconsider any decision" rendered in a proceeding before the LAU. The challenged regulations are set forth in the margin.[3]

1. The full text of § 1160(e) reads as follows:
   **(e) Administrative and judicial review**
   **(1) Administrative and judicial review**
   There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection.
   **(2) Administrative review**
   **(A) Single level of administrative review**
   The Attorney General shall establish an appellate authority to provide for a single level of administrative appellate review of such a determination.
   **(B) Standard for review**
   Such administrative review shall be based solely upon the administrative record established at the time of the determination on the application and upon such additional or newly discovered evidence as may not have been available at the time of the determination.
   **(3) Judicial review**
   **(A) Limitation to review of exclusion or deportation**
   There shall be judicial review of such a denial only in the judicial review of an order of exclusion or deportation under section 1105a of this title.
   **(B) Standard for judicial review**
   Such judicial review shall be based solely upon the administrative record established at

the time of the review by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.
8 U.S.C. § 1160(e).

2. An appeal of an adverse decision is filed with the RPF. According to the government, the RPF reviews the file upon receipt of an appeal. If the RPF determines that evidence submitted on appeal rebuts the initial denial, the RPF may reopen the application and issue a new decision. If the RPF determines that the original decision was correct, it forwards the file to the LAU. *See* Letter to the Court from A.U.S.A. Kekatos, June 14, 1993, at 2.

3. The plaintiffs challenge two regulations. The first provides:

   *Motions to reopen or reconsider denials of special agricultural worker and legalization applications.* Upon the filing of an appeal to the Associate Commissioner, Examinations (Administrative Appeals Unit), the Director of a Regional Processing Facility ... may *sua sponte* reopen any proceeding under his or her

The plaintiffs in these consolidated cases filed motions to reopen their applications after the LAU issued a final denial. These motions were sometimes presented as "requests" that the INS *sua sponte* reopen a particular file rather than as formal motions to reopen. Substantively, there is no difference between these two types of applications, and we will refer to both merely as motions to reopen.

Although the INS maintains that it is not required under IRCA to entertain motions to reopen, it claims that it "does not ignore such motions." Letter to the Court from A.U.S.A. Kekatos, June 14, 1993 at 2. Specifically, the defendants state:

> [T]he INS does not ignore motions [to reopen], although it would be fully within its rights to do so. The Director of the LAU reviews the motion (or request) and any attached documents to decide whether there is any merit to the request. If the documents submitted convince the LAU's Director that there is the remotest possibility that the LAU made an error or did not consider a brief or evidence that was timely submitted, she will request the legalization applicant's file in order to thoroughly review the record and determine whether the case should be reconsidered *sua sponte.*

*Id.*

The fact that the INS does not ignore such motions is evidenced by correspondence that many, if not all, of the plaintiffs in this action received after they attempted to move to reopen their files. For example, in Septem-

ber of 1991, plaintiff Rahim received a letter from the INS which acknowledged receipt of the motion to reopen and advised him that:

> You have requested the Service move to reopen proceedings in this case. It has been determined that the need for this motion was not an error in fact made by the Service.

> As a matter of fairness, the Service will adjudicate pending appeals before deciding whether to reopen cases which were properly dismissed. Furthermore, while we are legally obligated to adjudicate pending appeals, the reopening of dismissed cases is a matter of discretion.

Letter from Andrea J. Quarantillo, Director Legalization Appeals Unit, to Charles A. Grutman, Esq., September 14, 1991 (the "September Letter") attached as Ex. A. to the Rahim Amended Complaint. The September Letter also informed Mr. Rahim that the INS would advise him in writing when a decision on their request had been made.

In December of 1992, INS sent Mr. Rahim a second letter which "supersede[d] any earlier correspondence you may have received from the LAU regarding motions to reopen or reconsider and reopening or reconsideration *sua sponte.*" Letter from Andrea J. Quarantillo, Director Legalization Appeals Unit, to Charles A. Grutman, Esq., December 23, 1992 (the "December Letter") attached as Ex. B to the Rahim Amended Complaint. The letter also informed Mr. Rahim:

jurisdiction opened under part 210 or 245a of this chapter and may reconsider any decision rendered in such proceeding. The new decision must be served on the appellant within 45 days of receipt of any brief and/or new evidence, or upon expiration or the time allowed for the submission of a brief. The Associate Commissioner, Examinations, or the Chief of the Administrative Appeals Unit may *sua sponte* reopen any proceeding conducted by that Unit under part 210 or 245a of this chapter and reconsider any decision rendered in such proceeding. *Motions to reopen a proceeding or reconsider a decision under part 210 or 245a of this chapter shall not be considered.* 8 C.F.R. § 103.5(b) (1993) (final emphasis added). The second challenged regulation provides: *Motions.* In accordance with the provisions of § 103.5(b) of this chapter, the director of a

regional processing facility ... may *sua sponte* reopen any proceeding under this part under his or her jurisdiction and reverse any adverse decision in such proceeding when appeal is taken under § 103.3(a)(2) of this part from such adverse decision; the Associate Commissioner, Examinations, and the Chief of the Administrative Appeals Unit may *sua sponte* reopen any proceeding conducted by that unit under this part and reconsider any decision rendered in such proceeding. The decision must be served on the appealing party within forty-five (45) days of receipt of any briefs and/or new evidence, or upon expiration of the time allowed for the submission or any briefs. *Motions to reopen a proceeding or reconsider a decision shall not be considered under this part.* 8 C.F.R. § 210.2(g) (1993) (final emphasis added).

The authority to reopen proceedings *sua sponte* has on occasion been exercised after receipt of a suggestion by a party or his or her representative that reopening might be appropriate. However, the regulation does not provide authority for you to make a formal motion to reopen and provides no review of a failure to reopen an appeal *sua sponte.* If your client wishes further review of the dismissal of his appeal, Congress provided for such review only through the judicial review of an order of exclusion or deportation under section 106 of the Immigration and Nationality Act.

*Id.* at 2.[4]

## DISCUSSION

### 1. *Subject Matter Jurisdiction*

Defendants first argue that this Court lacks jurisdiction to entertain this action. Specifically, defendants claim that this lawsuit is "an indirect but nevertheless obvious effort to adjudicate the plaintiff aliens' ultimate eligibility for SAW status." Defs.' Reply at 3. In other words, defendants contend that plaintiffs are seeking a "determination respecting an application for adjustment of status," within the meaning of § 1160(e)(1), and that judicial review would be available only on review of an order of exclusion or deportation pursuant to § 1160(e)(3)(A). In contrast, plaintiffs contend that they are not seeking judicial review by this Court of the INS's denial of SAW status to each individual plaintiff; instead, plaintiffs claim that they are "challenging INS regulations and policies which are precluding them from further pursuing their applications." Pls.' Mem. at 26.

The Supreme Court has addressed the jurisdictional issue raised by these consolidated cases twice in the recent past. In *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, 491–94, 111 S.Ct. 888, 896–97, 112 L.Ed.2d 1005 (1991), the Supreme Court considered whether § 1160(e) precluded a federal district court from exercising general federal question jurisdiction over an action alleging a pattern and practice of procedural due process violations by the INS in its administration of the SAW program. The Court held that § 1160(e) applied "only to review of denials of individual SAW applications" and not to "challenges to the procedures used by INS" and consequently that the district court had subject matter jurisdiction over the lawsuit. *Id.* at 494, 111 S.Ct. at 897. The Court reached this conclusion for several reasons. First, the Court concluded that reference in § 1160(e)(1) to "a determination" and in § 1160(e)(3) to "a denial" limit the scope of these provisions to "single" application determinations and do not cover collateral challenges to INS "practices and policies." *Id.* at 491–92, 111 S.Ct. at 896. The Court also noted that § 1160(e)(3)(B)'s requirement that judicial review be "based solely on the administrative record" under an "abuse of discretion" standard is inappropriate for review of statutory or constitutional claims which are generally reviewed de novo by the courts. *Id.* at 493–94, 111 S.Ct. at 897. Finally, the Court noted that "had Congress intended the limited review provisions of [§ 1160(e)] to encompass challenges to INS procedure and practice, it could easily have used broader statutory language." *Id.* at 494, 111 S.Ct. at 897.

More recently, in *Reno v. Catholic Social Services,* —— U.S. ——, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993), the Supreme Court again considered the INS's claim that the Court lacked jurisdiction over two lawsuits challenging regulations enacted pursuant to Title II of IRCA. Describing this position as "out of line" with its earlier decision in *Haitian Refugee Center,* the Court rejected the INS's argument that a provision virtually identical to § 1160(e) "precludes district court jurisdiction over an action challenging the legality of a regulation without referring to or relying on the denial of any individual application." *Id.* at ——, 113 S.Ct. at ——. The Court remanded, however, for further factual development to determine whether the particular members of the plaintiff class had ripe

---

**4.** Plaintiffs' counsel informs us that the newest form letter sent from the INS to certain plaintiffs informs the applicant that his motion to reopen has been received and rejected by the INS. *See* Letter to the Court from Charles A. Grutman, June 29, 1993, at 2 n. 1. The parties did not furnish the Court with a copy of this form letter.

claims. *See id.* at ——, 113 S.Ct. at —— ("a class member's claim would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the [challenged] regulations to him").

Since each of the plaintiffs in the consolidated cases before this Court filed motions with the INS to reopen their files, and since these motions were rejected as a result of the application by the INS of the challenged regulations, we are not confronted with a ripeness problem. Instead, the jurisdictional issue is whether the plaintiffs in these consolidated cases challenge "the legality of a regulation without referring to or relying on the denial of any individual application." *Id.* at 4656. If that is the case, § 1160(e) does not foreclose the exercise of jurisdiction by this Court over this action.

The amended complaints all seek identical relief:

A. A Declaratory Judgment, declaring 8 C.F.R. 103.5(b) and 210.2(g) and the Defendants' newly announced policy [as evidenced by the letters received by certain plaintiffs from the INS] to be null and void . . .;

B. A WRIT OF MANDAMUS or a MANDATORY INJUNCTION, compelling any and all Defendants to immediately reopen the Plaintiff's case on the grounds that 8 C.F.R. 103.5 and 8 C.F.R. 210.2(g) and the newly announced policies [as set forth in the letters received by certain plaintiffs from the INS] are null and void . . .;

C. A WRIT OF MANDAMUS or a MANDATORY INJUNCTION, compelling any and all Defendants to immediately reopen the Plaintiff's case on the grounds that the manner in which the Defendants have treated the motions to reopen and reconsider constitute an abuse of discretion and are contrary to Congressional intent, and compelling Defendants to grant Plaintiff the right to work and travel while the case is pending before the AAU, and in connection therewith;

D. A DECLARATORY JUDGMENT that the new rules . . . are null and void because they constitute an abuse of discre-

tion and are contrary to Congressional intent and are an abuse of the rule making power granted the Defendants . . .;

E. A WRIT OF MANDAMUS compelling any and all Defendants to immediately make a decision whether to reopen and reconsider the Plaintiff's case. . . .

Amended Complaint, Addendum Clauses.

██ In each of these claims for relief, plaintiffs ask this Court to determine, under various theories, whether the manner in which the INS implements the SAW provisions of IRCA is consistent with the text of IRCA. Clauses A and D, quoted above, are direct challenges to the procedures used by the INS in implementing IRCA, and they clearly qualify as collateral attacks. It is true that in clauses B, C, and E plaintiffs ask this Court to order the defendants to reopen their cases, in the event this Court should find that the failure of the INS to recognize motions to reopen made by SAW status applicants is contrary to IRCA. However, we do not believe that this deprives the Court of jurisdiction. In these claims for relief, plaintiffs do not seek "a substantive declaration that they are entitled to SAW status." *McNary,* 498 U.S. at 495, 111 S.Ct. at 898. "Rather, if allowed to prevail in this action, respondents would only be entitled to have their case files reopened and their applications reconsidered in light of the newly prescribed INS procedures." *Id.* For that reason, this case is readily distinguishable from *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), where the Court held that it lacked jurisdiction to review a "procedural" challenge to the denial of reimbursement under the Medicare Act for a particular surgical procedure because the essence of the complaint was a claim of entitlement to payment for that surgical procedure. The essence of the complaints in these consolidated cases is a challenge to the INS's regulations barring motions to reopen.

Accordingly, we conclude that we have general federal question jurisdiction over this lawsuit under 28 U.S.C. § 1331.

### 2. *Defendants' Motion to Dismiss*

At the outset, a few words are in order regarding the exact nature of the plaintiffs'

claim. At the time this litigation was initiated, the INS's position with respect to how it processed requests to reopen SAW applications was not entirely clear. Given the statements contained in the September and December Letters, quoted above, the plaintiffs' belief that such motions were ignored by the INS was not unreasonable, and their concern that blatant errors might not receive consideration was understandable. However, the INS has now made clear that motions to reopen are read, acknowledged, and considered to determine whether there is "the *remotest possibility* that the LAU made an error or did not consider a brief or evidence that was timely submitted." Letter to the Court from A.U.S.A. Kekatos, June 14, 1993, at 2 (emphasis added). If such an error is discovered, the INS will *sua sponte* reopen the application and proceed appropriately. Essentially, INS exercises its *sua sponte* discretion to reopen as a method of correcting its own errors.[5] It appears that the INS will not *sua sponte* reopen a file to consider new evidence.

In light of this clarification, plaintiffs' challenge of the INS regulations appears to have two bases. First, plaintiffs seem to object to the absence of formal procedures for obtaining *"sua sponte"* reconsideration of an application by the INS. Second, and more broadly, plaintiffs claim that the challenged regulations are arbitrary and capricious and contrary to IRCA in that they preclude an applicant from presenting new evidence in support of his or her application after the LAU has issued its final determination on an application. In other words, plaintiffs claim that the regulations are defective because they prevent an applicant from making "full-blown" motions to reopen. Defendants counter by arguing that the regulations are consistent with the text, legislative history, and spirit of Title III of the Reform Act.

■ We begin our analysis, as we must, with the language of the Reform Act. Al-

though no mention is made of motions to reopen in the text of Title III of IRCA, we believe that the challenged regulations are entirely consistent with the statute; in the very least they are based on a permissible construction of the statute and are not arbitrary and capricious as plaintiffs contend. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

First, examining the statutory provisions governing SAW applications as a whole, it is evident that Congress envisioned a procedure by which all available evidence would be submitted before the RPF in the first instance. Even § 1160(e)(2)(B), which provides that new evidence may be presented during the administrative appeal of a denial of a SAW application, limits the types of evidence that may be presented for the first time before the LAU: such evidence must be "newly discovered" *and* must not have been available at the time of the determination by the RPF. We disagree with the plaintiffs that the limited right under § 1160(e)(2)(B) to supplement a record for the purposes of an administrative appeal confers on the alien a broad right to file motions to reopen subsequent to a final denial of the application by the LAU. The challenged regulations are consistent with congressional intent to give the alien applicant a single opportunity—*i.e.,* before the RPF—to present evidence in support of a SAW application (with the limited exception set forth in § 1160(e)(2)(B)).

Second, § 1160(e)(3)(B) provides that judicial review of a denial of SAW status, when available, will be based "solely upon the administrative record established at the time of the review by the appellate authority," *i.e.,* by the LAU. We understand the language "time of the review" to refer to that time in the administrative appeal process that the LAU issues its decision with respect to the appeal. This language indicates that Con-

---

**5.** Although we believe that the plaintiffs' confusion with regard to INS's policy concerning motions to reopen is understandable, we note that in the September letter the INS informed Mr. Rahim that "[i]t has been determined that the need for this motion was not an error in fact made by the service." This suggests that the INS did not ignore Rahim's application; rather, the INS reviewed it to determine whether the agency had made a mistake in the processing of Rahim's application. This is consistent with INS's latest description of its policy with regard to motions to reopen.

gress did not envision the further development of the record beyond "the time of the review by the appellate authority," via a motion to reopen or any other mechanism. The statute provides that once the LAU has issued its final decision, the record is closed.

As further support for its position that the challenged regulations are inconsistent with IRCA, plaintiffs point out that the Senate's earlier version of IRCA, *see* § 202(f) of S. 1200, 99th Cong., 1st Sess. (1985), did not allow for the presentation of newly discovered evidence at the agency appellate level. The plaintiffs contend that by enacting § 1160(e)(2)(B), which contains such a provision, Congress intended to provide SAW applicants with a broad opportunity to establish eligibility at the administrative level, which, according to the plaintiffs, would require the INS to entertain motions to reopen. As we have noted above, § 1160(e)(2)(B) allows the admission of further evidence on administrative appeal only in narrowly prescribed situations, and therefore does not support plaintiffs' contention that Congress intended to provide a "broad opportunity" to present evidence at any level except before the RPF. The Reform Act's legislative history does not alter this conclusion. *Cf. Ardestani v. Immigration and Naturalization Service,* —— U.S. ——, ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (strong presumption that plain language of statute expresses congressional intent is rebutted only in rare and exceptional circumstances).

Plaintiffs also argue that the challenged regulations are contrary to congressional intent that IRCA be implemented in a liberal and generous fashion. *See, e.g.,* H.R.Rep. No. 682 (Part I), 99th Cong., 2d Sess. 72, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5649, 5676 (Congress intended the legalization program to be "implemented in a liberal and generous fashion"). However, the fact that Congress expected the INS to interpret IRCA liberally and flexibly does not compel the conclusion that the INS must consider motions to reopen filed by SAW applicants after the LAU has issued its final denial of the application. This is especially true where, as we have already noted above, the language of IRCA supports the INS's interpretation of the statute as not providing for motions to reopen.

We are sympathetic to the position in which certain SAW applicants may find themselves: in possession of relevant and probative evidence which would support their SAW application, but unable to submit it for consideration once a final determination has been issued by the LAU. However, it is clear that in enacting the SAW provisions of IRCA, Congress envisioned providing alien farm workers with a one time shot at becoming legally admitted. Congress' concern that the application process be expeditious and finite is manifest in the language of the statute and in the legislative history. Affording SAW applicants an opportunity to move to reopen their files after a final determination has been made by the LAU would frustrate the goals of expediency and finality.

Accordingly, we conclude that the challenged regulations are entirely consistent with IRCA.

## CONCLUSION

For the reasons set forth above, this Court concludes that it has jurisdiction over this lawsuit, but that the plaintiffs have failed to state a cause of action upon which relief can be granted. Accordingly, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is denied; however, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

The complaints in the above-captioned consolidated cases are hereby dismissed.

SO ORDERED.