958 F.2d 1089
 294 U.S.App.D.C. 231
 AYUDA, INC., et al.
v.
Richard THORNBURGH, Individually, and as Attorney General of
the United States, et al., Appellants.
AYUDA, INC., et al.
v.
Richard THORNBURGH, Individually, and as Attorney General of
the United States, et al., Appellants.
AYUDA, INC., et al., Appellants
v.
Richard THORNBURGH, et al.
 Nos. 88-5226, 90-5293.
 United States Court of Appeals,
District of Columbia Circuit.
 March 3, 1992.
 
 Donald E. Keener, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Robert Kendall, Jr., Asst. Director of Immigration Litigation, Dept. of Justice, Washington, D.C., were on the brief, for appellants in 88-5226 and 90-5293 and appellees in 89-5301. David J. Kline and John R. Bolton, Attys., Dept. of Justice, Washington, D.C., also entered appearances for appellants.
 Michael Rubin, with whom Wayne H. Matelski, Lynda Zengerle, Deborah Sanders, and Carolyn Waller, Washington, D.C., were on the brief, for appellees in 88-5226 and 90-5293. David Aronofsky, Washington, D.C., also entered an appearance for appellees.
 David M. Billings, Washington, D.C., for appellants in 89-5301. Wayne H. Matelski, Washington, D.C., also entered an appearance for appellants.
 ON APPELLEES' SUGGESTION FOR REHEARING EN BANC
 Before MIKVA, Chief Judge, WALD, EDWARDS, RUTH BADER GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE, HENDERSON and RANDOLPH, Circuit Judges.[294 U.S.App.D.C. 232] ORDER
 PER CURIAM.
 
 
 1
 Appellees' Suggestion for Rehearing En Banc and the response thereto have been circulated to the full Court. The taking of a vote was requested. Thereafter, a majority of the judges of the Court in regular active service did not vote in favor of the suggestion. Upon consideration of the foregoing it is
 
 
 2
 ORDERED, by the Court en banc, that the suggestion is denied.
 
 
 3
 Chief Judge MIKVA and Circuit Judges WALD, HARRY T. EDWARDS, RUTH BADER GINSBURG and BUCKLEY would grant the suggestion for rehearing en banc.
 
 
 4
 Separate statement filed by Circuit Judge WALD, dissenting from the denial of rehearing en banc.
 
 
 5
 Separate statement filed by Circuit Judge SILBERMAN, concurring in the denial of rehearing en banc.
 
 
 6
 Separate statement filed by Circuit Judge STEPHEN F. WILLIAMS, concurring in the denial of rehearing en banc.
 
 
 7
 WALD, Circuit Judge, dissenting from the denial of rehearing en banc, with whom MIKVA, Chief Judge, and HARRY T. EDWARDS and RUTH BADER GINSBURG, Circuit Judges, join:
 
 
 8
 I believe the court should hear this case en banc in order to correct a serious misconstruction of both the Immigration Reform and Control Act ( "IRCA" ) and the Supreme Court's opinion in McNary v. Haitian Refugee Center, --- U.S. ----, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Despite the clearest of signals from that Court to the effect that jurisdiction lies in the district court to hear challenges to policies, practices or procedures of the Immigration and Naturalization Service ("INS") that deny to aliens their statutory rights to legalization, and despite the vacation and remand by that Court of a prior panel opinion denying such jurisdiction in this case, the panel has reinstated its original dismissal by reading McNary in a remarkably rigid fashion, confining it to challenges that are incapable of being raised in individual legalization and deportation appeals. The panel's rationale undeniably requires rejection of challenges to any rule or regulation or practice that could be litigated in an individual deportation appeal. Ayuda, Inc. v. Thornburgh, 948 F.2d 742, 753-54 (D.C.Cir.1991). Yet, both the Ninth and Seventh Circuits have interpreted McNary in just the opposite way, to confirm district court jurisdiction over a challenge to a regulation limiting eligibility for legalization, despite the indisputable fact that the validity of such a regulation could have been raised by the alien plaintiffs in individual deportation proceedings. Catholic Social Servs., Inc. v. Thornburgh,, 956 F.2d 914 (9th Cir.1992) (Hug, J.); Morales v. Yeutter, 952 F.2d 954 (7th Cir.1991) (Posner, J.). The McNary Court has, moreover, definitively refuted the panel's assertion that the aliens had any reasonable opportunity to contest INS interpretations, whether regulations or practices, through the legalization procedure.
 
 
 9
 [B]ecause there is no provision for direct judicial review of the denial of SAW status unless the alien is later apprehended and deportation proceedings are initiated, most aliens ... can ensure themselves review ... only if they voluntarily surrender themselves for deportation.... [T]hat price is tantamount to a complete denial of judicial review.
 
 
 10
 111 S.Ct. at 898. The panel's emasculation of the Supreme Court's authoritative interpretation of IRCA in McNary should not stand as circuit precedent.
 
 
 11
 It seems, however, that my colleagues are willing to bury any doubts about the panel's construction of McNary because of an alternative holding that the challenge was unripe since the INS had not yet taken a final position with regard to the eligibility of the so-called " § 265 aliens" (nonimmigrant aliens who had failed to file the requisite papers needed to maintain their legal status in the country).
 
 
 12
 The facts are these: The § 265 aliens had been indisputably barred from eligibility [294 U.S.App.D.C. 233] under the prevailing INS regulation until April 6, 1988, when the district court issued its ruling that the "known to the Government" requirement in the statute meant known to one or more government agencies, not just the INS. The district judge's ruling, acquiesced in by the INS, left unclear, however, whether those aliens who were "known" through their failure to file required documents rather than by affirmative documents in their file were eligible for legalization. QDEs in major cities throughout the United States, mandated as statutory agents to assist eligible aliens in applying for legalization, and so bound to follow INS regulations and policies, attested that they had either been directly told by INS officers or understood from prior INS information that § 265 aliens were not eligible for or would not be recommended for legalization. Affidavits of Garcia, Limon, Church, Mohn, Tafoya, Joseph, Hanish, Suppiah (D.D.C. Apr. 28, 1988). (Indeed, the INS counsel himself stated before the district court that he was "at a loss to see how the absence of documentation ... would come within the ... standard for legalization.") With the May 4, 1988 statutory deadline for legalization only weeks away, and in light of the QDEs' dilemma of whether to advise illegal aliens to come out of the shadows and file applications against agency advice, the plaintiffs sought a declaration from the district court that § 265 aliens were also included within the "known to the Government" category. It is the district court's response to that urgent need for clarification of the § 265 aliens' status, in the form of an order requiring the INS to process and not to deny outright such legalization applications (at least until a formal position had been taken by the government as to their eligibility), that the panel found unripe. In short, the panel ruled that in the last weeks before the final deadline for amnesty the INS could wait out the confused and unsure § 265 aliens by declining to declare a formal policy as to their eligibility and thereby prevent any general challenge to the on-site practice of many INS offices of discouraging applications from § 265 aliens. I simply do not believe traditional doctrines of ripeness or primary jurisdiction were meant to encompass any such scenario.
 
 
 13
 I am afraid we have done an irremediable injustice to the 4,000-6,000 aliens who have filed with the Special Masters appointed by the district court sworn statements justifying their inability on account of misleading advice to file formal legalization applications prior to the deadline and who are now barred forever from amnesty because of the panel's serpentine construct denying all jurisdiction to the district court as to any group of illegal aliens in this suit, § 265 or otherwise. Ayuda, 948 F.2d at 757-58. This is a regrettable decision both for them and for the law of our Circuit.
 
 
 14
 SILBERMAN, Circuit Judge with whom D.H. GINSBURG, Circuit Judge, joins, concurring in the denial of rehearing en banc:
 
 
 15
 The issue before the full court is, of course, somewhat different from the jurisdictional questions in the cases which were extensively discussed in the panel opinion and Judge Wald's dissent. Now our focus is on whether the case is en banc worthy, and with all due respect, we do not think the dissenters make a substantial argument that it is.
 
 
 16
 Our opinion bars district court review of INS actions that are amenable to meaningful judicial review in the courts of appeals in accordance with the judicial review provisions of the Immigration Reform and Control Act of 1986 (IRCA). The decision rests on two separate jurisdictional grounds: statutory preclusion of district court review, and lack of ripeness and finality. Petitioners make no serious argument that even if they could surmount the statutory preclusion barrier, they could also scale the ripeness and finality hurdle. Judge Wald, having twice tried (unsuccessfully, we submit) to provide a riposte to the government's well-founded assertion that no concrete or formal INS policy regarding the meaning of the word "known" in the statutory phrase "known to the Government" has ever emerged, now suggests--for the first time--that the INS pursued a nefarious "on-site practice" of discouraging [294 U.S.App.D.C. 234] applications from § 265 aliens while refusing to declare a formal policy as to their eligibility.
 
 
 17
 There is no support whatsoever in the record for that accusation. Indeed, the theory that the government could be thought to have knowledge of an alien's unlawful status simply because the alien stopped filing quarterly reports required under INA § 265 was not presented to the district court until just two weeks before the statutory deadline for legalization applications. And at that time, as we observed in our opinion, the most that could be said is that a few INS local offices (according to the record, only four of the more than one hundred offices nationwide) had indicated that if aliens filed applications for legalization based on the § 265 theory, the offices would recommend denial. This meant only that the applications would be referred upward for individual adjudication, with no predetermined result, since the INS Legalization Appeals Unit (LAU) had yet to decide a single case presenting the theory.
 
 
 18
 In truth, nothing at all barred aliens who wished to pursue their § 265 claims from filing an application for legalization prior to the statutory deadline. We are told that about 1,800 aliens did so; their applications have been held by the INS pending completion of this litigation. Nor is there any support for Judge Wald's assertion that the QDEs would have somehow violated their obligations under the statute by advising the aliens they counseled to do as did those 1,800 and file their applications before the deadline rather than gambling that the district court would be affirmed.
 
 
 19
 The QDE "dilemma" that Judge Wald describes is quite artificial. The QDEs were, it is true, required to comply with INS regulations, but there was no regulation addressing the § 265 question and no indication that the INS had ever focused on that issue. And even if the INS had adopted a policy or practice on the matter, the INS Legalization Manual, which contained binding instructions for INS staff and the QDEs, specifically stated that any alien could insist on filing an application. Nothing, therefore, would have prevented a QDE from advising an alien to apply even if the INS had formally determined that the alien's application would ultimately be denied. Indeed, if INS offices had ever closed their doors and refused to allow aliens to submit applications (there is no evidence any INS office did so), then the McNary exception would apply. See Ayuda, Inc. v. Thornburgh, 948 F.2d 742, 751 (D.C.Cir.1991). There was, moreover, little reason for aliens not to "come out of the shadows" and apply since IRCA expressly prohibited the INS from using any information gained from an application to initiate or prosecute a deportation proceeding against an alien. See id. at 752. The aliens who did not apply, if any,[1] simply followed incorrect advice. See id. at 756.
 
 
 20
 In any event, even if we had determined that the district court had jurisdiction, we rather doubt that any aliens affected would ultimately have been entitled to legalization, because petitioners' substantive claim, that the word "known" must be extended to include such broadly imputed knowledge, seems tenuous. See Ayuda, Inc. v. Thornburgh, 880 F.2d 1325, 1344-45 (D.C.Cir.1988), vacated and remanded, --- U.S. ----, 111 S.Ct. 1068, 112 L.Ed.2d 1174 (1991). Not only, then, is the case not ripe, but the real world effects on aliens of all the sound and fury of this extended litigation may well be virtually undetectable.
 
 
 21
 As to the specific judicial review provisions of the IRCA legalization program, it should be first noted that the program is receding into history. Secondly, although Judge Wald apparently received the "clearest of signals" from the Supreme Court's opinion in McNary v. Haitian Refugee Center, --- U.S. ----, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991), we too did our level best to interpret its stated reasoning and apply it to our case. Without renewing the entire debate, we simply reiterate that petitioners [294 U.S.App.D.C. 235] and Judge Wald still have not supplied any answer to the crucial boundary problem of how one would distinguish, under their interpretation of McNary, between the legalization cases that must come to the courts of appeals for review and those that could be brought in the district courts. See Ayuda, 948 F.2d at 753. Nor did the Ninth Circuit in Catholic Social Servs., Inc. v. Thornburgh,, 956 F.2d 914, 920-21 (9th Cir.1992). The Seventh Circuit, by contrast, recognized the seriousness of this problem:
 
 
 22
 We are mindful of the concern expressed by the D.C. Circuit in Ayuda, Inc. v. Thornburgh [948 F.2d 742, 746] No. 88-5226, slip op. at 18 (D.C.Cir. Nov. 5, 1991), with the danger of undermining the remedial scheme of the immigration laws by imputing patterns and policies behind determinations and then allowing those patterns and policies to be challenged in injunction suits under 28 U.S.C. § 1331. That danger is not present, however, when as in this case the challenge is to a formal regulation determining eligibility.
 
 
 23
 Morales v. Yeutter, 952 F.2d 954 (7th Cir.1991).
 
 
 24
 In our case, the government did not appeal the district court's original order holding the INS regulation to be inconsistent with IRCA, so Morales determination as to formal (and final) regulations creates no square intercircuit dispute. See also Catholic Social Servs., 956 F.2d at 916-17, 918 (reviewing two INS regulations). As the government notes, furthermore, the "principal plaintiff in fact" in Morales was a sod growers' association that unquestionably had standing under IRCA yet could not under that statute seek judicial review in the courts of appeals; the Seventh Circuit did not have to, and did not, focus on the status of the individual alien plaintiffs. The standing of the QDEs, on the other hand, is a dubious proposition left undecided by this court and the Supreme Court. There is, then, no conflict in the holdings of Morales and Ayuda (but see Catholic Social Servs., 956 F.2d at 920-21), and any tension between the cases seems of little import because surely no more regulations will issue governing the now long-expired IRCA legalization programs.
 
 
 25
 Our doubts about the QDEs' standing warrant a final observation. Despite the repeated references to the "aliens" and the "plaintiffs" in our opinions, the only actual plaintiffs besides the QDEs were five individual aliens whose claims were fully resolved by the district court's initial order, which is not before us. Motions by other organizations to intervene on the § 265 issue were never granted (the QDEs already in the case adopted the claim), nor was any class of aliens ever certified. Cf. Catholic Social Servs., 956 F.2d at 917, 918 n. 2, 918 (noting that two classes of aliens were certified and that the organizational plaintiffs in one case were dismissed by stipulation). The strong possibility that no plaintiffs with standing remain in the case is yet another reason for considering this case unworthy of additional judicial review.
 
 
 26
 STEPHEN F. WILLIAMS, Circuit Judge, concurring in the denial of rehearing en banc:
 
 
 27
 I do not think it a sound use of our resources to have an en banc hearing on the correct interpretation of 8 U.S.C. § 1255a(f), in a case where the panel's decisions that the plaintiffs' claim was unripe and that there was no final agency action are so thoroughly convincing. See Ayuda, Inc. v. Thornburgh, 948 F.2d 742, 754-56 (D.C.Cir.1991). It would be hard to focus on the exact scope of the class of agency decisions that are outside § 1255a(f)(1)'s preclusion in a case where there is no agency decision at all. As about 1800 aliens have filed timely applications raising the § 265 claim, and the INS has withheld adjudication solely because of the pending litigation, see Response in Opposition to Petition for Rehearing and Suggestion for Rehearing En Banc at 18, there should be no difficulty securing administrative resolution once the courts clear the way.
 
 
 
 [1]
 The 4,000-6,000 figure Judge Wald uses includes aliens affected by the district court's original order, which the government did not appeal. If there are any aliens still affected by the original lawsuit, they are § 265 aliens, whose number is entirely undetermined