30 F.3d 1106
 Francisco NARANJO-AGUILERA; Candelario Orozco-Macias;
Juventino Tafolla-Ramirez; Hector Orozco-Flores;
Celestino Gaona,
Plaintiffs-Appellees-Cross-Appellants,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE; William P. Barr,
in his official capacity as Attorney General of
the United States,
Defendants-Appellants-Cross-Appellees.
 Nos. 92-16653, 92-16933.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 14, 1994.
Decided July 22, 1994.
 
 Stephen A. Rosenbaum, California Rural Legal Assistance, San Francisco, CA, Bruce Goldstein, Farmworker Justice Fund, Inc., Washington, DC, Charles Wheeler and Karen Miksch, National Immigration Law Center, Inc., Los Angeles, CA, for plaintiffs-appellees-cross-appellants.
 
 
 1
 Donald E. Keener, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for defendants-appellants-cross-appellees.
 
 
 2
 Appeal from the United States District Court for the Eastern District of California.
 
 
 3
 Before: FLETCHER and TROTT, Circuit Judges, and KING,* District Judge.
 
 
 4
 Opinion by Judge FLETCHER.
 
 FLETCHER, Circuit Judge:
 
 5
 This is a class action challenge to Immigration and Naturalization Service (INS) interpretations of a provision of the Special Agricultural Workers legalization program created by the Immigration Reform and Control Act of 1986 (IRCA), as amended by the Immigration Nursing Relief Act of 1989 (INRA). The class members are immigrant agricultural workers who were denied lawful temporary resident status, or had such status terminated, because they had been convicted of one felony or three misdemeanors. They argue that the INS regulations and policies which mandated the denial or termination of their temporary resident status are unlawful interpretations of the one felony/three misdemeanor provision of IRCA, 8 U.S.C. Sec. 1160(a)(3)(B)(ii)(II). The district court rejected the INS's argument that it did not have jurisdiction to hear this case, and proceeded to grant summary judgment in favor of the class members on some of their claims, and in favor of the INS on others. The INS appeals and the farmworkers cross-appeal, but we do not reach the merits of the district court's decision on the issues appealed because we hold that it lacked jurisdiction.
 
 
 6
 * The Immigration Reform and Control Act of 1986, Pub.L. No. 99-603, 100 Stat. 3359, created two amnesty programs for undocumented aliens. The first, not at issue in this case, was a broad legalization program for aliens who had resided unlawfully in the United States since 1982, had been continuously physically present here since 1986, and who were otherwise admissible as immigrants. 8 U.S.C. Sec. 1255a. The second, called the Special Agricultural Worker (SAW) program, allowed undocumented alien farmworkers to attain first temporary and then permanent resident status. 8 U.S.C. Sec. 1160.
 
 
 7
 Immigrant farmworkers desiring to attain lawful temporary resident status under the SAW program were directed to apply between June 1, 1987 and November 30, 1988. 8 U.S.C. Sec. 1160(a)(1)(A). The INS was required to grant temporary resident status to any timely applicant who could establish that he or she was admissible as an immigrant, was currently residing in the United States, and had performed at least 90 days of agricultural labor during the year ending May 1, 1986. Id. Secs. 1160(a)(1)(A), (B), (C). Either one or two years thereafter (depending on the length of the alien's prior agricultural labor), the alien's status was to be adjusted to that of a lawful permanent resident. Id. Secs. 1160(a)(2)(A), (B).
 
 
 8
 Deportable or excludable aliens (e.g., those convicted of narcotics violations) could not acquire even temporary resident status under the SAW program, because they were not admissible to the United States as immigrants. Id. Sec. 1160(a)(1)(C). In the Immigration Nursing Relief Act of 1989, Pub.L. No. 101-238, 103 Stat. 2099, Congress amended IRCA to provide for the denial of permanent resident status, and the termination of temporary resident status, for those farmworkers who had succeeded in acquiring temporary resident status through the SAW program, but who had been convicted of one felony or three misdemeanors:
 
 
 9
 (3) Termination of temporary residence
 
 
 10
 * * * * * *
 
 
 11
 (B) Before any alien becomes eligible for adjustment of status [from temporary to permanent residence], the Attorney General may deny adjustment to permanent status and provide for termination of the temporary resident status granted such alien under paragraph (1) if....
 
 
 12
 (ii) the alien commits an act that (I) makes the alien inadmissible to the United States as an immigrant, except as provided under subsection (c)(2) of this section, or (II) is convicted of a felony or 3 or more misdemeanors committed in the United States.
 
 
 13
 8 U.S.C. Sec. 1160(a)(3)(B)(ii)(II) (emphasis added) (Supp. I 1989) [hereinafter "the one/three rule"]. The instant lawsuit challenges the INS's interpretation of this section.
 
 
 14
 Without giving the public advance notice or the opportunity to comment, the INS published an interim rule implementing the one/three rule on April 5, 1990. 55 Fed.Reg. 12,629 (Apr. 5, 1990). The rule took effect on the date of publication. It provided not only for the termination of temporary resident status on the basis of the one/three rule,[1] but also for the denial of temporary resident status in the first place. Id. at 12,630; see 8 C.F.R. Sec. 210.3(d)(3) (1993). The farmworkers argued that this rulemaking procedure violated the Fifth Amendment and the Administrative Procedures Act, 5 U.S.C. Sec. 701 et seq. (APA). The district court rejected the due process claim, but held the APA claim meritorious and invalidated the interim rule's application of the one/three rule to deny temporary resident status. Order of June 29, 1992, at 32-35. Neither party appeals these holdings.
 
 
 15
 The farmworkers also contended that the interim rule's application of the one/three rule to deny temporary resident status contravened the plain language of 8 U.S.C. Sec. 1160(a)(3)(B)(ii)(II), which applies only to terminations of such status. The district court agreed, and the INS does not appeal that ruling.
 
 
 16
 In addition to challenging the regulation, the farmworkers also alleged that the INS wrongly denied or terminated their temporary resident status based on its unlawful policy of applying the one/three rule to convictions secured prior to December 18, 1989 (the enactment date of INRA). The district court agreed, and held that the present-tense statutory language of Sec. 1160(a)(3)(B) applies only to post-enactment convictions. Order of June 29, 1992 at 16-21. The INS appeals this holding.
 
 
 17
 Finally, the farmworkers argued that the INS has an unlawful policy of treating the one/three rule as a per se ground for denial or termination of temporary resident status, rather than as one factor to be weighed, in the INS's discretion and on a case-by-case basis, along with other positive and negative factors.[2] The district court rejected this argument, id. at 21-24, and the farmworkers challenge this ruling in their cross-appeal.
 
 II
 
 18
 The INS contends that the district court lacked subject matter jurisdiction to adjudicate the immigrant's claims. It argues that jurisdiction is precluded by the doctrines of ripeness, exhaustion, and finality, as well as by IRCA's exclusive judicial review provision, 8 U.S.C. Sec. 1160(e)(1).[3] The district court disagreed. Order of June 29, 1992, at 14-16. We review de novo. Xiao v. Barr, 979 F.2d 151, 153 (9th Cir.1992).
 
 
 19
 The district court held that the "plaintiffs in the instant case allege a pattern or practice of unlawful conduct by the INS in its administration of the SAW program; they do not seek review on the merits of the denial of a particular application." Order of June 29, 1992, at 15. In holding that such plaintiffs are not covered by the exclusive statutory review scheme of Sec. 1255a(f)(1), the court relied on the U.S. Supreme Court's analysis in McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). However, we must consider McNary's significance in light of Reno v. Catholic Social Servs., Inc., --- U.S. ----, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) ("CSS" ), which was decided after the district court's decision in this case.[4]
 
 A.
 
 20
 In McNary, organizations and individual plaintiffs filed suit in federal district court, challenging the INS's practices and policies in processing SAW applications. The challenged practices included (1) failing to allow applicants the opportunity to rebut adverse evidence; (2) denying applicants the opportunity to present witnesses on their own behalf; (3) failing to provide interpreters for non-English speaking applicants; and (4) failing to make a verbatim recording of the application hearing, which could be used for a subsequent appeal. McNary, 498 U.S. at 487-88, 111 S.Ct. at 893-94. The INS contended that district court jurisdiction to consider these challenges was precluded by the exclusive review provision of 8 U.S.C. Sec. 1160(e)(1). The Supreme Court rejected this argument, holding that Sec. 1160(e)(1)'s language, which covered "a determination respecting an application" for legalization, did not apply to lawsuits in which large groups of plaintiffs challenged across-the-board INS practices. The Court held that Sec. 1160(e)(1)
 
 
 21
 describ[es] the process of direct review of individual denials of SAW status, rather than as referring to general collateral challenges to unconstitutional practices and policies used by the agency in processing applications.
 
 
 22
 Id. at 492, 111 S.Ct. at 896 (emphasis added). The Court also noted that the administrative appeal process "does not address the kind of procedural and constitutional claims respondents bring in this action," and therefore could not generate a factual record sufficient to assist a reviewing court in evaluating such claims. Id. at 493, 111 S.Ct. at 896-97.[5] On these grounds, the court held that the exclusive review provision "applies only to review of denials of individual SAW applications." Id. at 494, 111 S.Ct. at 897 (emphasis added).
 
 
 23
 In dicta, the Court also provided two further bases for its holding. First, it expressed a general criticism of the exclusive review provision itself:
 
 
 24
 most aliens denied SAW status can ensure themselves review in courts of appeals only if they voluntarily surrender themselves for deportation. Quite obviously, that price is tantamount to a complete denial of judicial review for most undocumented aliens.
 
 
 25
 Id. at 496-97, 111 S.Ct. at 898.[6] Second, the Court analogized the case before it to Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), a social security case in which plaintiffs sought a declaratory judgment that a regulation denying reimbursement for certain medical procedures was invalid. The Bowen Court held that the lawsuit was not barred by the exclusive review provisions of the Social Security Act, 42 U.S.C. Secs. 1395ff(b)(1)(C), 1395u(b)(3)(C), saying
 
 
 26
 an attack on the validity of a regulation is not the kind of administrative action that we described ... as an "amount determination" which decides "the amount of the Medicare payment to be made on a particular claim" and with respect to which the Act impliedly denies judicial review.
 
 
 27
 Id. at 675-76, 106 S.Ct. at 2138-39. The McNary Court found that the challenges brought by the plaintiffs in the case before it were of the broad type found to fall outside of the exclusive review provision in Bowen. McNary, 498 U.S. at 498, 111 S.Ct. at 899.
 
 B.
 
 28
 The farmworkers urge us to hold that McNary applies not only to collateral challenges to INS procedures, but also to class actions which, like theirs, attack INS policies and regulations interpreting IRCA's substantive eligibility requirements. Although we find merit to their position, we are foreclosed from adopting it by the Supreme Court's decision in CSS.
 
 
 29
 In CSS, class plaintiffs brought two separate lawsuits in district court, challenging the INS's interpretation of IRCA's legalization program for aliens who had resided continuously and unlawfully in the United States at least since 1982. See 8 U.S.C. Sec. 1255a. In the first suit, plaintiffs challenged the INS's interpretation of IRCA's "continuous physical presence" requirement, id. Sec. 1255a(a)(3).[7] In the second, plaintiffs challenged the INS's interpretation of IRCA's "continuous unlawful residence" requirement, id. Sec. 1255a(a)(2)(A).[8] Plaintiffs received favorable district court rulings in both lawsuits. On appeal to the Ninth Circuit, the INS argued, inter alia, that the district court did not have jurisdiction to consider these challenges. We consolidated the two lawsuits and upheld district court jurisdiction on the authority of McNary, and affirmed on the merits. Catholic Social Servs., Inc. v. Thornburgh, 956 F.2d at 919-21. Our interpretation of McNary created a conflict with the D.C. Circuit, see Ayuda, Inc. v. Thornburgh, 948 F.2d 742 (D.C.Cir.1991), and the Supreme Court granted certiorari, --- U.S. ----, 112 S.Ct. 2990, 120 L.Ed.2d 867 (1992).
 
 
 30
 The Court in CSS agreed with McNary that the exclusive review provision of IRCA's legalization program, 8 U.S.C. Sec. 1255a(f)(1),[9] applies only to "determinations respecting applications for adjustment of status," and thus would not apply to class action challenges not based on such determinations. The Court said,
 
 
 31
 we reject [the INS's] argument that Sec. 1255a(f)(1) precludes district court jurisdiction over an action challenging the legality of a regulation without referring to or relying on the denial of any individual application.
 
 
 32
 CSS, --- U.S. at ----, 113 S.Ct. at 2495. Although this appeared helpful to the plaintiffs, the Court went on to say,
 
 
 33
 [s]ection 1255a(f)(1), however, is not the only jurisdictional hurdle in the way of [the plaintiffs], whose claims still must satisfy the jurisdictional and justiciability requirements that apply in the absence of a specific Congressional directive.
 
 
 34
 Id. Specifically, the Court held that the plaintiff's claims must still satisfy the ripeness requirement described in Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967).
 
 
 35
 The Court then held that although an agency's promulgation of regulations will in some cases itself be enough to create a ripe controversy,[10] that was not true in the case before it. CSS, --- U.S. at ---- - ----, 113 S.Ct. at 1495-96. The Court said,
 
 
 36
 the promulgation of the challenged regulations did not itself give each ... class member a ripe claim; a class member's claim would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the regulation to him.
 
 
 37
 Id. --- U.S. at ----, 113 S.Ct. at 2496 (emphasis added). The Court found that the class members in the case before it had not taken such "affirmative steps" and thus forced the INS to "block" their path,[11] and therefore held that the plaintiff's claims were not ripe. Id. --- U.S. at ---- - ----, 113 S.Ct. at 2496-97.
 
 
 38
 The Court went on to note that a plaintiff's challenge to the INS regulations would ordinarily become ripe "when the INS formally denied the alien's application on the ground that the regulation rendered him ineligible for legalization." Id. --- U.S. at ----, 113 S.Ct. at 2497. But when that happens, continued the Court, the plaintiff
 
 
 39
 would still find himself at least temporarily barred by the Reform Act's exclusive review provisions, since he would be seeking "judicial review of a determination respecting an application." 8 U.S.C. Sec. 1255a(f)(1).
 
 
 40
 Id. (emphasis added). Thus the very INS action which makes a plaintiff's claim ripe also triggers IRCA's exclusive review provision, thereby barring district court jurisdiction. The Court summed up:
 
 
 41
 [t]he ripeness doctrine and the Reform Act's jurisdictional provisions ... thus dovetail neatly, and not necessarily by mere coincidence. Congress may well have assumed that, in the ordinary case, the courts would not hear a challenge to regulations specifying limits to eligibility before those regulations were actually applied to an individual, whose challenge to the denial of an individual application would proceed within the Reform Act's limited scheme.
 
 
 42
 Id. (emphasis added).
 
 
 43
 Under IRCA's "limited scheme," the appropriate means of challenging INS regulations would not be a class action like the one before the Court, but rather an individual appeal from an order of deportation, pursued through the administrative system and ultimately brought before a Circuit Court of Appeals. See 8 U.S.C. Sec. 1105a. The Court did not think aliens forced to follow this procedure in challenging INS regulations would be unduly prejudiced; it thus distinguished McNary:
 
 
 44
 [The plaintiffs in this case] do not argue that this limited scheme would afford them inadequate review of a determination based on the regulations they challenge, presumably because they would be able to obtain such review on appeal from a deportation order, if they become subject to such an order; their situation is thus different from that of the "17 unsuccessful individual SAW applicants" in McNary ... whose procedural objections, we concluded, could receive no practical judicial review within the scheme established by 8 U.S.C. Sec. 1160(e).
 
 
 45
 Id. (quoting McNary, 498 U.S. at 487, 111 S.Ct. at 893-94).
 
 
 46
 While finding no district court jurisdiction for the class plaintiffs' direct challenges to the INS regulations, the Court did recognize one exception, based on the holding in McNary. Specifically, the Court held that those plaintiffs whose applications had never even been accepted, due to an alleged INS practice called "front-desking,"[12] could bring claims in district court if their applications were front-desked based on the regulations at issue. The Court was persuaded that front-desked applicants, because their applications had never formally been filed, would have no recourse to administrative review, and would have no way of building an administrative record. Id. --- U.S. at ---- - ----, 113 S.Ct. at 2498-99. The Court concluded that because Congress could not have meant to preclude all judicial review for such persons, district court jurisdiction would exist in their cases. Id. --- U.S. at ----, 113 S.Ct. at 2499.
 
 C.
 
 47
 Two clear propositions emerge from CSS and McNary. First, district courts have jurisdiction over "collateral," "procedural" challenges to INS practices in the processing of applications, such as the front-desking in CSS or the denial of interpreters in McNary. In such cases, Sec. 1160(e)(1)'s limited review scheme would be incapable of generating an administrative record adequate for effective judicial review. Where plaintiffs challenge alleged INS application-processing practices on a nationwide scale, a class action lawsuit with district court discovery mechanisms is an appropriate, and indeed the most effective, method of judicial review.
 
 
 48
 Second, however, the "neat dovetailing" of ripeness doctrine and IRCA's exclusive review provisions, see CSS, --- U.S. at ----, 113 S.Ct. at 2497, forecloses aliens from challenging INS regulations or policies interpreting IRCA's substantive eligibility criteria, except on appeal from an order of deportation. Justice O'Connor has characterized this new legal landscape in the following words:
 
 
 49
 [in CSS we] concluded that the only people who could ask for injunctive or declaratory relief under IRCA were those who were told by the INS that they should not even bother to file their applications.... Under the statute, aliens who did apply and whose applications were considered but rejected could only get judicial review of this rejection if the INS tried to deport them. 8 U.S.C. Sec. 1255a(f)(1).
 
 
 50
 INS v. Legalization Assistance Project, --- U.S. ----, ----, 114 S.Ct. 422, 423, 126 L.Ed.2d 410 (1993) (O'Connor, Circuit Justice) (emphasis added);[13] see also Ayuda, Inc. v. Reno, 7 F.3d 246, 249 (D.C.Cir.1993) (holding that in CSS "the Supreme Court conclusively foreclosed all efforts to gain federal district court review of INS interpretations of IRCA"); id. at 251 (Wald, J., dissenting) (acknowledging that this is correct interpretation of CSS ).[14]
 
 D.
 
 51
 The plaintiffs here raise three substantive challenges to INS's interpretations of IRCA's one/three rule: that the INS's regulation unlawfully applies the rule to deny temporary resident status, that the INS unlawfully applies the rule to pre-enactment convictions, and that the INS unlawfully treats the rule as a per se reason to terminate temporary resident status or deny permanent resident status. As these are "efforts to gain federal district court review of INS interpretations of IRCA," Ayuda, 7 F.3d at 249, they are foreclosed by CSS. Specifically, unlike the claims in CSS itself, the claims here are ripe because the plaintiffs have either applied for temporary resident status and been denied on the basis of the challenged policies and regulations, or have had such status terminated on that basis. It is just this fact, however, that brings their cases within the exclusive review provisions of 8 U.S.C. Sec. 1160(e)(1). CSS, --- U.S. at ----, 113 S.Ct. at 2497. Put another way, what makes their claims ripe are adverse " 'determination[s] respecting an application for adjustment of status,' " which trigger the Act's exclusive review scheme. Id.
 
 
 52
 The district court, analogizing the facts before it to those of McNary, found jurisdiction because the present lawsuit is a class-wide challenge to a "pattern" of INS "practices." The plaintiffs in McNary, however, challenged the INS's failure to provide interpreters, to make verbatim transcripts, and to allow applicants to present witnesses--all claimed defects in procedure. McNary, 498 U.S. at 487-88, 111 S.Ct. at 893-94.[15] The plaintiffs here, on the other hand, like the CSS plaintiffs, challenge INS's interpretations of IRCA's substantive eligibility requirements. See CSS, --- U.S. at ---- - ----, 113 S.Ct. at 2490-92.
 
 
 53
 The plaintiffs here also argue that they do not rely upon denials of individual applications in order to establish ripeness, and thus that their claims do not trigger the exclusive review provision of 8 U.S.C. Sec. 1255a(f)(1). Appellee's Brief at 18 n. 11. However, in describing the concrete adverse consequences which make their claims ripe, they rely primarily upon the "denial and termination of their status as lawful resident aliens." Id. at 15. The Court in CSS presumed that Congress intended such challenges to INS regulations under IRCA "ordinarily" to occur through appeals of individual orders of deportation. CSS, --- U.S. at ----, 113 S.Ct. at 2497. Moreover, the fact that this is a class action does not change the ripeness analysis: individual plaintiffs whose claims are ripe by virtue of INS denials of their legalization applications may not avoid the holding in CSS merely by joining in a class-action challenge to nationwide INS "practices."
 
 
 54
 The plaintiffs further contend that they will be unable to argue their claims effectively if forced to bring them in the context of appeals from orders of deportation. We must disagree. Petitioners appealing orders of deportation routinely bring statutory and constitutional challenges to INS regulations and policies. See, e.g., Lepe-Guitron v. INS, 16 F.3d 1021 (9th Cir.1994) (statutory challenge to INS interpretation of 8 U.S.C. Sec. 1182(c)); Tapia-Acuna v. INS, 640 F.2d 223 (9th Cir.1981) (constitutional challenge to INS interpretation of same section). A challenge to the INS interpretation of the one/three rule can be effectively advanced in the context of an appeal from an individual order of deportation.[16]
 
 
 55
 The plaintiffs also argue that using the Act's limited review scheme would lead to a circuit-by-circuit, case-by-case adjudicatory approach much inferior to the class action model they favor. Class actions, however, can also lead to circuit-by-circuit and case-by-case divergences. Nor will plaintiffs forced through the exclusive review system have to re-invent the wheel in each case. When a court of appeals invalidates a regulation, even in the context of reviewing an individual petitioner's order of deportation, that regulation is infirm across the circuit and in every case.[17]
 
 III
 
 56
 The district court lacked jurisdiction to consider the plaintiffs' challenges to INS's substantive interpretations of the one/three rule. We vacate the district court's decision as to all issues appealed by the appellant and cross-appellants. To the extent noted the decision of the district court is VACATED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 Id.; 8 C.F.R. Sec. 210.4(d)(2)(iii). The language of this part of the INS's interim rule closely tracks the statutory language of the INRA amendments
 
 
 [2]
 The rule provides that the Attorney General "may" deny or terminate the temporary resident status of aliens convicted of one felony or three misdemeanors. 8 U.S.C. Sec. 1160(a)(3)(B)
 
 
 [3]
 "There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection." 8 U.S.C. Sec. 1160(e)(1)
 Section 1160(e) provides for a single level of administrative review, id. Sec. 1160(e)(2)(A), and for judicial review only upon appeal of an order of deportation, as provided for in 8 U.S.C. Sec. 1105a. Id. Sec. 1160(e)(3)(A).
 
 
 [4]
 As described below, CSS vacated our decision in Catholic Social Services, Inc. v. Thornburgh, 956 F.2d 914 (9th Cir.1992)
 
 
 [5]
 See also id. at 497, 111 S.Ct. at 899 (citing ABA amicus brief to the effect that "district court factfinding would [not] unnecessarily duplicate an adequate administrative record ... in 'pattern and practice' cases where district court factfinding is essential")
 
 
 [6]
 IRCA allows illegal immigrant workers to apply for legalization without the risk of being deported as a result of making themselves known to the INS. 8 U.S.C. Sec. 1160(b)(6). Thus, SAW applicants could bring a district court challenge to INS practices without risking deportation. Under the exclusive review provision, however, immigrants can obtain judicial review only by surrendering themselves for deportation
 
 
 [7]
 Under an INS regulation, any alien who left the country without securing advance parole was considered to fall outside the "brief, casual and innocent" absence exception to IRCA's continuous presence requirement. 8 C.F.R. Sec. 245a.1(g)
 
 
 [8]
 Under an INS regulation, any alien who left the country and then re-entered by presenting facially valid documentation was considered to fall outside IRCA's continuous unlawful residence requirement. 8 C.F.R. Sec. 245a.2(b)(8)
 
 
 [9]
 Section 1255a(f)(1) is identical to 8 U.S.C. Sec. 1160(e)(1), the provision at issue in this case
 
 
 [10]
 The Court appeared to have in mind the promulgation of duty-imposing statutes, which present plaintiffs "with the immediate dilemma to choose between complying with the newly imposed, disadvantageous restrictions and risking serious penalties for violation." Id. --- U.S. at ----, 113 S.Ct. at 2495; see id. --- U.S. at ---- - ----, 113 S.Ct. at 2501-02 (O'Connor, J., concurring in the judgment) (arguing that the majority's ripeness analysis relies too heavily on an implicit distinction between "duty-creating" and "benefit-conferring" regulations)
 
 
 [11]
 The class members in CSS were persons who failed to file timely applications for legalization, allegedly because they knew they would be found ineligible under the challenged INS regulations. See id. --- U.S. at ---- n. 19, 113 S.Ct. at 2496 n. 19
 
 
 [12]
 The INS allegedly had assistants who looked over applications before they had even been officially filed, and rejected them if they found the applicant statutorily ineligible. Id. --- U.S. at ---- - ----, 113 S.Ct. at 2497-98. Since these assistants had desks "out front," the practice became known as "front-desking."
 
 
 [13]
 The Legalization Assistance case is another in which this Circuit's jurisdictional analysis has been reversed by the Supreme Court. See Legalization Assistance Project v. INS, 976 F.2d 1198 (9th Cir.1992), vacated and remanded, --- U.S. ----, 114 S.Ct. 594, 126 L.Ed.2d 560 (1993)
 
 
 [14]
 Prior to CSS, Judge Wald vigorously asserted the need to keep the district court door open for plaintiffs seeking to challenge INS regulations interpreting IRCA. See Ayuda, Inc. v. Thornburgh, 958 F.2d 1089, 1090-91 (D.C.Cir.1992) (Wald, J., dissenting from denial of suggestion for rehearing en banc) (arguing that McNary was "clearest of signals" that district courts have jurisdiction to consider challenges to INS policies and regulations), vacated and remanded, --- U.S. ----, 113 S.Ct. 3026, 125 L.Ed.2d 714 (1993)
 
 
 [15]
 See also Rahim v. McNary, 827 F.Supp. 224, 228-29 (S.D.N.Y.1993) (assuming jurisdiction, under CSS, over class action in which plaintiffs challenged INS regulations concerning motions to reopen, because such procedural claims are based on the processing rather than on the denial of individual applications), aff'd, 24 F.3d 440 (2d Cir.1994)
 
 
 [16]
 We are aware that in practical terms CSS will significantly hinder organizations who seek to aid immigrant farmworkers in bringing lawsuits. Whereas such organizations could formerly mount broad, class-based challenges to INS regulations, they will henceforth have to locate individual petitioners whose situations present the issue they wish to raise and whose administrative records are favorable
 
 
 [17]
 Plaintiffs also claim that placing oneself in deportation proceedings is too high a price to pay for obtaining judicial review. Be that as it may, the Supreme Court held in CSS that in order to obtain judicial review, "the alien must first either surrender to the INS for deportation or wait for the INS to catch him." --- U.S. at ---- n. 16, 113 S.Ct. at 2494 n. 16 and accompanying text